LILLIAN F. BROWNSTEIN, Administratrix, *v.* NEW
YORK LIFE INSURANCE COMPANY.

[No. 15, October Term, 1929.]

*Decided January 7th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William H. Price, Jr.,* and *Frederick W. Brune,* with whom were *Semmes, Bowen & Semmes,* on the brief, for the appellant.

*John B. Deming,* with whom were *Keech, Deming & Carman* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

It appears from the declaration that on May 22nd, 1920, the New York Life Insurance Company, appellee, issued a life insurance policy to Isador C. Brownstein for $10,000, with a disability clause which provided that, in the event of the insured becoming wholly disabled by bodily injury or disease before arriving at the age of sixty years, he would be thereafter relieved, during such disability, of the payment of the annual premiums on the policy, and would be paid, during disability, on each anniversary date thereafter, an amount equal to one-tenth of the face amount of the policy, or $1,000. For this protection there was added to and included in the annual premium $9.90. On the same day the appellee issued to the same insured a similar policy for $5,000, with an additional charge of $4.95, and on June 19th, 1920, another policy for $7,000, for which there was a charge for disability of $7.28.

At the time the policies were issued the insured was twenty-six years of age, and within two years thereafter he became wholly and permanently disabled, and so continued to the day of his death, on April 13th, 1926. The suit is brought by Lillian F. B. Brownstein, administratrix, appellant, for an apportionment of the disability benefits on the first and second policies from May 22nd, 1925, and on the third from June 19th, 1925, to April 13th, 1926. The appellee demurred to the declaration, and from the judgment thereon in its favor this appeal was taken.

The appellee contended that if the insured died before the anniversary dates of the policies, the disability benefits did

not accrue from the last preceding anniversary dates to the day of the death of the insured, and were not apportionable, and with this contention the court below agreed. The provisions of the policy covering the disability of the insured, and which this court is called on to construe, are:

"And the company agrees to pay to the insured one-tenth the face of this policy per annum during the lifetime of the insured, if the insured becomes wholly and permanently disabled before age 60, subject to all terms and conditions contained in section 1 hereof.

"This policy takes effect as of the 22nd of May, nineteen hundred and twenty, which day is the anniversary of the policy.

"Section 1. Total and Permanent Disability Benefits. Whenever the company receives due proof, before default in the payment of premiums, that the insured, before the anniversary of the policy on which the insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration of profit, and that such disability has then existed for not less than sixty days. * * * Then

"1. Waiver of Premium.—(During disability.)

"2. Life Income to Insured. One year after the anniversary of the policy next succeeding the receipt of such proof, the company will pay the insured a sum equal to one-tenth of the face of the policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the insured. * * *

"3. Recovery from Disability. The Company may at any time and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or if it appears that the insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made."

The appellant asks that the rule of construction adopted in many jurisdictions, to the effect that an insurance policy shall be most strongly construed against the insurer, be applied in this case. In this state there is no difference, however, between the construction of policies of insurance and any other contracts. In *Frontier Mortgage Corporation v. Heft,* 146 Md. 1, 12, the opinion, by Judge Digges, says: "A policy of insurance, and every clause and part thereof, is the contract and, like all contracts, should be construed so as to effectuate the real purpose and intention of the parties, giving to the language employed, when unambiguous, its ordinary and usually accepted meaning. * * *. The rule adopted in some jurisdictions that insurance contracts are to be construed most strongly against the insurer has been definitely repudiated by this court, and the sounder view, that the intention of the parties as gathered from the whole instrument, now prevails."

Both parties in this case urge the application of the construction given to annuities as the rule to be applied in this case, the appellee urging that the strict common law rule that annuities are not apportionable applies (*Brown v. Keech,* 112 Md. 398), and the appellant that the contract involved in this suit brings it within the principle of the exceptions to the rule exhaustively discussed in *Brown v. Keech,* pp. 401-409. In 2 *R. C. L.* 12, it is said: "On this uniform and unbending rule of the common law, that annuities were not apportionable, two well recognized exceptions were early engrafted, namely, where the annuity was given by a parent to an infant child, or by a husband to a wife living separate and apart from him. * * * The question as to apportionment has also arisen where annuities have been given in lieu of dower, and while a sharp conflict of authority exists on this point, some courts vigorously supporting the common law rule that there can be no apportionment of an annuity in respect of time, except where it is payable by way of maintenance to an infant or *feme covert* (*Tracey v. Strong,* 2 Conn. 659; *Mower v. Sanford,* 76 Conn. 504, 63 L. R. A. 625; *Irving v. Rankine,* 79 N. Y. 636; *Chase v. Darby,* 110 Mich. 314; note,

21 Ann. Cases, 315); it would seem that the weight of authority is in favor of numbering among the exceptions to the general rule an annuity created and accepted in lieu of dower. *Brown v. Keech, supra,* 21 Ann. Cas. 308, 29 L. R. A. (N. S.) 775; 63 *L. R. A.* 629, note; *Blight v. Blight,* 51 Pa. 420; *Gheen v. Osborne,* 17 S. & R. (Pa.) 171; *Rhode Island Hospital Trust Co. v. Harris,* 20 R. I. 160; *In re Cushing,* 58 Vt. 393; *Lynch v. Huston,* 138 Mo. App. 167; *Parker v. Seely,* 56 N. J. Eq. 110; *Quinn v. Madigan,* 65 N. H. 8. The extension of the doctrine of apportionment to include an annuity given to a widow in lieu of dower is based upon the ground that the annuity is necessary for the support of the widow until her death, or that that which is given in the place of dower should last as long as that for which it is given. Moreover, the inequity and arbitrariness of the general rule has been so generally conceded that modern legislation and judicial decisions have steadily tended to narrow the rule and enlarge the exceptions. *Wilson's Appeal,* 108 Pa. St. 346. (Acts 1929, ch. 495, sec. 305C, article 93 of Maryland Code, applies to instruments executed after July 1st, 1929). So that it may be safely stated that the trend of judicial opinion is now in favor of applying the principle of apportionment to any case where the annuity is made for the purpose of maintenance and support." See 2 *Perry on Trusts,* 556; 3 *C. J.* 217, 218. The reason assigned for allowing an apportionment of annuities given in lieu of dower is that there was a consideration passing from the annuitant to the donor or grantor, and that it was inconsistent that a widow should give up a right which continued from day to day for one which might be terminated months before her death.

However, the rules governing annuities rest upon a different basis than those which relate to a contract of insurance against the risk of a permanent disability in consideration of the periodic payment of a premium. See *People v. Security Life Ins. Co.,* 78 N. Y. 114, 128, 7 *Abb. New Cas.* 198, 233; *Comm. v. Metropolitan Life Ins. Co.,* 254 Pa. 510; *In re National Provincial Assur. Co.,* L. R. 9 Eq. 306. Indeed it

would seem that an insurance contract to protect the assured against a loss of maintenance would fall within the reasons of the exceptions to the general common law rule denying the apportionment of an annuity.

No matter what the rules of construction may be with regard to annuities or any other contracts or instruments providing for the payment of fixed sums on certain and definite dates and times, resort must be had here to the paper on which payment is sought by the appellant and resisted by the appellee. The subject matter of the agreement and the knowledge of it which the parties possessed, the objects which they sought to accomplish and the inducements which they had for dealing with each other as they did, must be considered. Courts in the construction of contracts look to the language employed, the subject matter and the surrounding circumstances. *American Bonding Co. v. U. S. Fid. & Guar. Co.,* 131 Md. 189, 197; *Bond v. Humbird,* 118 Md. 650; *Phoenix Pad Mfg. Co. v. Roth,* 127 Md. 540, 543; *Frontier Mortgage Corp. v. Heft, supra.* What this court must do is to satisfy itself as to what constituted the actual contract between the parties, not to make one for them, and, to this end, recourse must be had to the entire contract and every part of it, for that is the instrument on which the appellant's claim is based, and she is entitled to recover on what is there written, or she is not entitled to recover at all.

This suit is based on the introductory and second paragraph of section 1 of the policy entitled: "Total and Permanent Disability Benefits." The introductory paragraph provides that "whenever the company received due proof before default in the payment of premium that the insured, before the anniversary of the policy on which the insured's age at nearest birthday is sixty years, and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit," then it is provided by paragraph 2 that "one year after the anniversary of the policy next succeeding the receipt of such proof the

company will pay the insured a sum equal to one-tenth of the face of the policy, and a like sum on each anniversary thereafter during the lifetime and continued disability of the insured."

The apparent object of the policy was that, if the insured should become so disabled that he could not engage in any occupation, that the loss of "remuneration or profit" would be replaced by an income which would tide him over the time of his necessity and assure him a living, and that is the thing for which he paid a consideration in addition to the premium on his life policy. Undoubtedly what was in his mind at the time was that he would receive protection against the hazard of loss of health and earning power. He was to receive for this an income when he would need it most.

But, says the appellee, he was not entitled to receive anything unless during the period of his disability he should be alive on the anniversary date of the policy, because the appellee there said it would "pay the insured a sum equal to one-tenth of the face of the policy and a like sum on each anniversary * * * during the lifetime and continued disability of the insured." In making this contention it overlooked to us what appears to be an important statement in the policy. Paragraph 2 contains these words in type larger and heavier than that contained in the body of the paragraph: "Life Income to Insured." These words state and constitute the subject matter of the whole provision, and that says it is a "life income to the insured"—an income for life and not an income for eleven months less than life, and if the policy is to be construed according to its language these words cannot be ignored. "We must regard the whole agreement, the nature of the transaction in hand, its objects and purposes, and the means and manner of accomplishing them, as disclosed by the instrument itself." *Varnum v. Thurston,* 17 Md. 470, 497, "A written contract, according to general rules, should be so construed as to effect the intention of the parties, as it appears from the terms and subject matter of the contract; and where a particular phrase or clause is such

that its meaning may be restricted or enlarged, it should receive the interpretation most consistent with the real purpose of the agreement." *Dalrymple v. Lauman,* 23 Md. 376, 399; *Roberts v. Bonaparte,* 73 Md. 191, 204.

If we were to yield to the contention of the appellee that the words "the company will pay the insured a sum equal to one-tenth of the face of the policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the insured" means that it would not be required to pay unless the insured should be both alive and disabled on the anniversary date, it would only be to disregard the purpose of the disability provisions of the policy. The construction of a contract is not arrived at by dissecting its provisions, but by reading them together and as a whole, and giving it that construction which will effectuate its objects and purposes.

The prime object of the disability provisions of the policy was to secure a "Life Income to Assured" if he should "become wholly disabled by bodily injury or disease" and thereby be "permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit," the condition precedent to the insured's right to the enjoyment of the disability benefits being that he should submit to the company due proof that such disability had existed for sixty days before default in the payment of premium. The language of the contract so quoted, and particularly the conspicuously printed words, "Life Income to Insured," were bound to attract the attention of the insured, and are accepted by this court as evidence of the meaning and purpose of the contract.

The insured certainly had every reason to believe that, if he should be so overcome by bodily injury or disease as to make him unfit to engage in any occupation, he would be relieved of the distress involved in such a condition, and that, during his lifetime, he would have what the appellee promised, namely, a "Life Income to Insured," and that this would be secured to him to the last days of his life and when most

needed; and, in our opinion, this is what the disability provision of the policy said to him. The policy contemplated an insurance for a permanent and continuous disability during the life of the assured, and, therefore, for the purpose of practical convenience, it was necessary to fix in the policy a time when such payments would be made; and this was done by making the pay day on the anniversary date of the policy. So long as the assured lived the payments would be made to him, when alive and disabled, on the anniversary date of the policy, and this would be a compliance with the letter of the contract. If the assured should die before the anniversary date, the amount of the insurance that had accrued prior to the day of his death could not be paid to him, as he was not surviving on the anniversary date, and this again would gratify the terms of the contract; but the stipulations of the policy nowhere negative the accrual, from day to day, until that of death, of the benefits under the policy for total and permanent, continuous disability. When it is considered that this feature of the policy is in lieu of the assured's lost earnings, from day to day, and, because of his disability, is to provide maintenance, there seems to be no reasonable ground for denying the personal representatives of the assured the right to recover the benefits which had accrued to the day of the death of the assured. The company drew the contract, and it is a rule common to the construction of all written instruments that it is to be taken, in cases of doubtful meaning, against the draftsman.

It is, therefore, the opinion of this court that the disability benefits in the policy sued on are apportionable and the judgment should be reversed.

*Judgment reversed, with costs to the appellant, and case remanded for a new trial.*